David L. Knapper
State Bar No. 010328
**LAW OFFICES OF DAVID L. KNAPPER**
1599 East Orangewood, Suite 125
Phoenix, Arizona 85020
Telephone:        (602) 252-0809
Facsimile No:     (602) 256-0432
E-Mail:           dlk@knapperlaw.com
Attorney for Movant/Secured Creditor **CITY NATIONAL BANK**

## IN THE UNITED STATES BANKRUPTCY COURT
### IN AND FOR THE DISTRICT OF ARIZONA, PHOENIX DIVISION

| | |
|---|---|
| In Re | CHAPTER 11 |
| AMPELIO BARRON FELIX and ANAMARIA FELIX, | CASE NO. 2:09-bk-27291-CGC |
| | (Assigned to the Honorable Judge Charles G. Case II) |
| | **(Hearing Scheduled for January 19, 2010 at 2:30 p.m.)** |
| Debtors. | |
| CITY NATIONAL BANK, a national banking association, for itself and as acquirer of certain assets and liabilities of Imperial Capital Bank, from the Federal Deposit Insurance Corporation Acting as Receiver, | **CITY NATIONAL BANK'S CONSOLIDATED:** |
| Movant, | **(1) CONTINUING OBJECTION TO APPLICATION FOR AN EXPEDITED ORDER TO EMPLOY COUNSEL** |
| v. | **(2) MOTION TO CONVERT CASE TO CHAPTER 7** |
| AMPELIO BARRON FELIX and ANAMARIA FELIX, aka Ana Maria Felix, Debtors, and FELIX FAMILY TRUST, U/A DATED SEPTEMBER 23, 2008, Interested Party, | & |
| Debtors/Respondents. | **(3) REQUEST FOR IMMEDIATE ENTRY OF ORDER GRANTING MOVANT RELIEF FROM THE AUTOMATIC STAY** |

1

Movant/Secured Creditor CITY NATIONAL BANK, a national banking association, for itself and as acquirer of certain assets and liabilities of Imperial Capital Bank, from the Federal Deposit Insurance Corporation Acting as Receiver ("CNB"), hereby files this pleading which is supported by the following Declaration:

## DECLARATION OF TIM S. HUFF

STATE OF ARIZONA )
                ) ss.
County of Maricopa )

TIM S. HUFF, being first duly sworn upon their oaths, depose and state:

1. I have been asked by CNB to submit this Declaration.

2. My company, acting primarily through myself, has been appointed to serve as Receiver over the apartments that are CNB's collateral ("Apartments"), commencing January 1, 2010.

3. Although I have requested documentation from the Debtors, to date, the Debtors have only provided the materials attached hereto as Exhibit "A".

4. The documents comprising Exhibit "A" do not provide any meaningful accounting of what rents were generated from the Apartments commencing the date this Chapter 11 was initiated, October 27, 2009, through December 31, 2009.

5. The documents comprising Exhibit "A" do not provide any accounting of what happened to the rents that were generated during this same time period.

6. Although there are apparently 15 tenants at the Apartments, Debtors have only provided me with copies of 4 Leases.

7. Apparently, 17 other apartment units are vacant.

2

8. I have been informed by CNB that in conjunction with a 2004 refinance, CNB's predecessor, Imperial Capital Bank ("ICB"), extended Debtors a loan that allowed them included $266,500 cash-out, and that in conjunction with a 2007 refinance, ICB extended another loan that allowed Debtors an additional $193,298 cash-out.

9. Where this cash-out went is unknown to me, but having conducted a physical inspection of the Apartments, I find it hard to believe that much of this cumulative approximate $460,000 of cash-out was utilized to improve the Apartments. In part, that is because the Apartments, as I found them on January 1, 2010, are dilapidated. The pool is cracked and empty, and the filter and pump system destroyed. At least 12 windows were broken. Several apartments units require substantial repairs. There are many plumbing leaks. 12 of the gas hot water heaters are in extremely poor condition. Many of the tenants have been complaining about how their heaters are not working. The laundry room is trashed. The wooden fence at the back of the Apartments if falling down, and other sections of the fence must be replaced.

10. It is, in my professional opinion, impossible, at least at this juncture, because of the Debtors' refusal to cooperate and/or their own poor-record keeping, to trace the money that was going-in and going-out of the Apartments prior to January 1, 2010.

11. Debtors' December, 2010 Operating Report filed in this Chapter 11 is of no help because it does not segregate the funds received and spent by the Debtors relating to the Apartments from their other financial endeavors.

12. Attached as Exhibit "B" are photographs I took of the Apartments the first week of January, 2010

FURTHER AFFIANTS SAYETH NAUGHT.

_____
TIM S. HUFF

3

SUBSCRIBED AND SWORN TO before me this 15th day of January, 2009, by TIM S. HUFF.

DONNA L BOCK
Notary Public - Arizona
Maricopa County
My Comm. Expires Mar 19, 2012

_Notary Public_

My Commission Expires:

March 19 2012

## PRAYER

Based upon the foregoing, CNB respectfully requests that the Court:

A.    vacate *nunc pro tunc* its prior Order authorizing the retention of Debtors' current counsel – because Debtors have failed to account for CNB's cash collateral (despite repeated requests that they do so – including in open Court), and that cash collateral may well have been used by Debtors to cover all, or a portion, of their current counsel's $5,000.00 retainer (plus maybe the $5,000.00 retainer they paid their first attorney);

B.    command Debtor's current counsel disgorge the $5,000.00 received;

C.    enter an appropriate Order converting this Chapter 11 to a Chapter 7 proceeding – as an appropriate measure to be taken by this Court in light of Debtors' failure to account for CNB's cash collateral, and also, because pursuant to this Court's Minute Entry dated December, 2009, Debtors should have filed a Disclosure Statement and Plan of Reorganization not later than January 8, 2010, but did not do so, _even though the Court explicitly forewarned_ _them that their failure to meet this January 8, 2010 deadline would result in this case being_ _either converted or dismissed,_ and lastly

D.    immediately enter an appropriate Order that grants CNB bankruptcy clearance to enforce its rights and remedies as a secured creditor, including the right to complete a pending Trustee's Sale on the collateral securing the debt that Debtors owe CNB – based upon

4

all that has transpired here, including, without limitation: (i) Debtors' failure to account for CNB's cash collateral; (ii) how, in slang, Debtors ran the Apartments into the ground before availing themselves to bankruptcy protection, and notwithstanding their pulling-out approximately $460,000.00 of equity/cash out of the Apartments, and (iii) with Debtors having failed to comply with the Court's aforementioned December 1, 2009 Minute Entry (with the Court already advising Debtors that without their filing a Plan, the Court shall be inclined to grant CNB bankruptcy clearance, and also, the Court pointing-out to Debtors' counsel how 11 U.S.C. § 1129[a][10] is extremely problematic to Debtors, especially considering the approximate $1,200,000 debt owing CNB (see Proof of Claim filed in this Chapter 11 on November 2, 2009) exceeds by approximately $650,000.00 what the Apartments are worth (because the only appraisal in existence, which CNB has already provided Debtors, reflects the Apartment's current FMV is $550,000, while Debtors have alleged in their Adversary Complaint that they believe the Apartments are worth approximately $532,500). Never mind how no Plan could ever be approved in this Chapter 11 because all CNB need do, if necessary, is to make an 11 U.S.C. § 1111(b) election to be treated as an unsecured creditor.

RESPECTFULLY SUBMITTED this 15th day of January, 2010.


LAW OFFICES OF DAVID L. KNAPPER


/s/David L. Knapper
David L. Knapper
Attorney for CNB

5

LAW OFFICES OF DAVID L. KNAPPER

1  COPY of the foregoing
2  transmitted this
3  15th day of January, 2010, to:

4
5  The Honorable Judge Charles G. Case II
6  United States Bankruptcy Court
7  230 North First Avenue
8  6th Floor, Courtroom No. 601
9  Phoenix, Arizona 85003

10  COPIES of the foregoing
11  mailed this 15th day of January, 2010, to:

12
13  Ampelio Barron Felix
14  AnaMaria Felix, aka Ana Maria Felix
15  Felix Family Trust, U/A Dated September 23, 2008
16  c/o Ampelio Barron Felix and AnaMaria Felix,
17  aka Ana Maria Felix,
18  Its Co-Trustees
19  13131 East Ocotillo Road
20  Chandler, Arizona 85249-2613

21  Debtors/Respondents

22  Joseph W. Charles, Esq.
23  JOSEPH W. CHARLES, P.C.
24  5704 West Palmaire Avenue
25  P.O. Box 1737
26  Glendale, Arizona 85311-1737
27  Attorney for Debtors/Respondents

28  OFFICE OF THE U.S. TRUSTEE
29  230 North 1st Avenue
30  Suite 204
31  Phoenix, Arizona 85003
32  Attorney for United States Trustee

33
34  /s/David L. Knapper
35  David L. Knapper

6

# EXHIBIT "A"

01/01/08 to 12/31/08

| | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEGINNING BALANCE | | | | | | | | | | | | | |
| **INCOME** | | | | | | | | | | | | | |
| DEPOSIT INCOME | | | | | | | | | | | | | |
| DEP RTD APS | | | | | | | | | | | | | |
| LAUNDRY | 179 | 184 | 189 | 192 | 189 | 182 | 191 | 169 | 183 | 169 | 183 | 188 | 2198 |
| RENTAL INCOME | 12000 | 12000 | 12500 | 12,000 | 13000 | 12400 | 12400 | 12500 | 12000 | 12100 | 12300 | 12300 | 147500 |
| **TOTAL INCOME** | 12179 | 12184 | 12689 | 12192 | 13189 | 12582 | 12591 | 12669 | 12183 | 12269 | 12483 | 12488 | 149698 |
| **EXPENSES** | | | | | | | | | | | | | |
| A C REPAIR | | | | | | | | | | | | | |
| ADVERTISEMENTS | | | | | | | | | | | | | |
| APPLIANCE'S | | | | | | | | | | | | | |
| CELLULAR PHONE | 89 | 89 | 89 | 95 | 98 | 99 | 99 | 98 | 103 | 104 | 106 | 104 | |
| TRUCK PAYMENT | | | | | | | | | | | | | |
| DEPOSIT REFUND | | | | | | | | | | | | | |
| MEDICAL INSURANCE | | | | | | | | | | | | | |
| ELECTRIC APS | 90 | 93 | 106 | 104 | 107 | 98 | 103 | 90 | 90 | 90 | 88 | 88 | |
| EVICTION'S | | | | | | | | | | | | | |
| GAS S W | | | | | | | | | | | | | |
| INSURANCE | *583* | *f.* | | | | | | | | | | | |
| LICENSE | | | | | | | 65 | 47 | 49 | 52 | 49 | 65 | |
| MAINT-REPAIR | 600 | 638 | 887 | 895 | 945 | 855 | 906 | 879 | 807 | 689 | 550 | 565 | |
| TRUCK MAINTENANCE | | | | | | | | | | | | | |
| MORTGAGE PRINCIPAL BA | 7630 | 7630 | 7630 | 7630 | 7630 | 7638 | 7638 | 7638 | 7638 | 8000 | 8000 | 8000 | |
| PAYROLL | | | | | | | | | | | | | |
| PEST CONTROL | | | | | | | | | | | | | |
| POOL EXPENSE | 55 | 55 | 55 | 58 | 65 | 68 | 78 | 46 | 37 | 55 | 45 | 45 | |
| ACCOUNTING SERVICES | 279 | 250 | 251 | 251 | 301 | 253 | 248 | 250 | 240 | 237 | 246 | 246 | |
| TAX CITY PHX PRIV | | | | | | | | | | | | | |
| TAX REAL ESTATE | | | | | | | | | | | | | |
| TAX | | | | | | | | | | | | | |
| TRASH | 154 | 155 | 155 | 164 | 165 | 159 | 156 | 176 | 173 | 172 | 167 | 169 | |
| WATER | 1235 | 1258 | 1350 | 1438 | 1568 | 1327 | 1212 | 1368 | 1235 | 1072 | 1078 | 1125 | |
| **TOTAL EXPENSES** | 10132 | 10168 | 10523 | 10635 | 10879 | 10497 | 10505 | 10592 | 10372 | 10471 | 10329 | 10407 | 125570 |
| Other IN/(outflow) | | | | | | | | | | | | | |
| Total Other in/(out) | | | | | | | | | | | | | |
| Net Cash Flow | 2047 | 2016 | 2168 | 1557 | 2310 | 2086 | 2086 | 2077 | 1811 | 1798 | 2154 | 2081 | 24188 |
| ENDING BALANCE | | | | | | | | | | | | | |

# GARDEN APARTMENTS

| | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **BEGINNING BALANCE** | | | | | | | | | | | | | |
| **INCOME** | | | | | | | | | | | | | |
| DEPOSIT INCOME | | | | | | | | | | | | | |
| DEP RTD APS | | | | | | | | | | | | | |
| LAUNDRY | 208 | 215 | 208 | 195 | 228 | 225 | 237 | 240 | 245 | | | | |
| RENTAL INCOME | 12000 | 12350 | 12250 | 12475 | 9950 | 10850 | 11200 | 9400 | 9190 | | | | |
| **TOTAL INCOME** | 12208 | 12565 | 12458 | 12670 | 10178 | 11075 | 11437 | 9640 | 9435 | 0 | 0 | 0 | |
| **EXPENSES** | | | | | | | | | | | | | |
| A C REPAIR | 180 | 215 | 90 | 270 | 230 | 80 | 150 | 220 | 470 | | | | |
| ADVERTISEMENTS | | | | | | | | | | | | | |
| APPLIANCE'S | 150 | 168 | 300 | | 300 | | | | 395 | | | | |
| CELLULAR PHONE | 85 | 85 | 78 | 76 | 76 | 76 | 98 | 136 | 136 | | | | |
| TRUCK PAYMENT | | | | | | | | | | | | | |
| DEPOSIT REFUND | | | | | | | | | | | | | |
| MEDICAL INSURANCE | | | | | | | | | | | | | |
| ELECTRIC APS | 90 | 88 | 87 | 92 | 87 | 89 | 95 | 98 | 96 | | | | |
| EVICTION'S | | | | | | | | | | | | | |
| GAS S W | 81 | 85 | 68 | 78 | 69 | 56 | 52 | 45 | 48 | | | | |
| INSURANCE | 593 | 593 | 593 | 593 | 583 | 583 | 583 | 583 | 583 | | | | |
| LICENSE | | | | | | | | | | | | | |
| MAINT-REPAIR | 622 | 926 | 845 | 879 | 980 | 746 | 890 | 837 | 745 | | | | |
| TRUCK MAINTENANCE | | | | | | | | | | | | | |
| MORTGAGE PRINCIPAL BA | 8030 | 8030 | 7630 | 7630 | 7630 | 7630 | 7630 | 7630 | 7630 | | | | |
| PAYROLL | | | | | | | | | | | | | |
| PEST CONTROL | 35 | 35 | 45 | 38 | 90 | 35 | 35 | 70 | 25 | | | | |
| POOL EXPENSE | | | | | | | | | | | | | |
| ACCOUNTING SERVICES | | | | | | | | | | | | | |
| TAX CITY PHX PRIV | 240 | 260 | 245 | 249 | 199 | 217 | 245 | 193 | 184 | | | | |
| TAX REAL ESTATE | | | | | | | | | | | | | |
| TAX | | | | | | | | | | | | | |
| TRASH | 162 | 163 | 164 | 160 | 172 | 176 | 176 | 178 | 178 | | | | |
| WATER | 983 | 1095 | 1032 | 1068 | 1250 | 1241 | 1390 | 1227 | 1216 | | | | |
| **TOTAL EXPENSES** | 11251 | 11743 | 11177 | 11133 | 11666 | 10929 | 11344 | 11217 | 11706 | | | | |
| Other IN/(outflow) | | | | | | | | | | | | | |
| Total Other in/(out) | | | | | | | | | | 0 | 0 | 0 | |
| Net Cash Flow | 957 | 822 | 1281 | 1537 | -1488 | 146 | 93 | -1577 | -2271 | | | | |
| capitol improvements | | | | | | | | | | | | | |

## CURRENT RENT ROLL INFORMATION

Project Name / Address / ID: Garden Apartments 4605 - 7612 - 2678 E. Roosevelt St. & 2675 E Portland  Borrower: Anfredo and Assumpcion Felix, Phoenix AZ 85008

Dates: 9-23-09   Prepared By: Anfredo Felix

| Seq # | Unit/Apt Number | Address / Tenant Name | Lease Occup Status | Months Continuous Occupancy | Security Deposit | Lease Start Date | Lease Exp Date | Apt Unit Base Rent $/Mo | Linked Rental Car Storage Spc # / Addt'l Rent | Asking Base Rent For Any Vacant Unit | Concessions? Prompt Pay Discount? or In Term Escalation Clause — Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 7612 | VACANT | | | | | | | | 550 | 2-bedroom Aprox 800 SF |
| 2 | 2 | Jesus Enrique Z | A | 3 | — | 5-25-09 | 6-1-10 | 450 | | | 1-bedroom Aprox 600 SF |
| 3 | 3 | Juan Arellano | A | 9 | — | 12-1-08 | 11-30-09 | 450 | | | 1-bedroom Aprox 600 SF |
| 4 | 4 | Jose Granados VAC | A | 2 | — | 7-1-09 | 6-30-10 | 550 | | | 2-bedroom Aprox 800 SF |
|  | 7618 | Ricardo Banderas | A | 11 | — | 10-15-08 | 9-10-09 | 550 | | | 1-bedroom Aprox 800 SF |
| 2 | 2 | Jesus Diaz Elorico | A | 5 | — | 3-25-09 | 8-1-09 | 475 / 445 | | | 1-bedroom Aprox 600 SF |
| 3 | 3 | Claudio Castro | A | 4 | — | 4-8-09 | 12-30-09 | 475 | | | 2-bedroom Aprox 800 SF |
| 4 | 7675 | Leonardo Lopez | A | 7 | — | 9-15-09 | 9-30-06 | 550 | | | 2-bedroom Aprox 800 SF |
|  | 2 | Gabino Salgado | A | 45 | 150 | 10-1-05 | 10-30-06 | 550 | | | 1-bedroom Aprox 600 SF |
|  | 2 | Artemio Torres | A | 46 | — | 9-1-05 | 10-30-06 | 450 | Delinquent | | 1-bedroom Aprox 600 SF |
| — | 3 | Roberto Ligueira | A | 13 | 150 | 6-1-08 | 5-30-09 | 450 | | | 1-bedroom Aprox 600 SF |
| | 4 | VACANT | | | | | | | | 1100 | 2-bedroom Aprox 700 SF |
| | | | | | 300 (Total Sec Dep) | | | 4950 (Current Rent Roll) | | | |

** Lease Occupancy Status:
A-Annual M-Monthly S-Semi Monthly

Total Rent - 10,350 - 9/m
Total Vacant - 3,900 + 5502 = 4,350

Signature: _____   Date: 9-11-09

Exhibit 9A- Current Rent Roll Information (4 2000)

# CURRENT RENT ROLL INFORMATION

Project Name / Address / ID: Garden Apartments  3608-3612-3618 S.Roosevelt st. 3623 E.Felix... Phx. Az 85008  ST   Borrower: Ampelio and Anamaria Felix

Date: 8-23-09   Prepared By: Ampelio Felix

| Seq # | Unit/Apt Number | Address / Tenant Name | Lease Occupcy Status | Months Continuous Occupancy | Security Deposit | Lease Start Date | Lease Exp Date | Apt Unit Base Rent $ / Mo. | Leased Rental Car Storage Sq # | Addn'l Rent | Asking Base Rent For Any Vacant Unit | Concessions? Yes | Concessions? No | Prompt Pay Discount? or In Term Escalation Clause. If Yes - Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 3608 - S. Roosevelt 1st st. | | | | | | | | | | | | |
| 13 | | Emiliano Acuna | A | 7 | ~ | 8-1-09 | 1-30-10 | 450~ | | | | | | 1 bedroom 1 bath Apts - 530 sf |
| 14 | | Maria Teresa Valentin | A | 12 | ~ | 8-12-08 | 7-30-09 | 450~ | | | | | | " |
| 15 | | Daniel Bravo | A | 2 | ~ | 6-16-09 | 6-30-10 | 450~ | café | | | | | " |
| — | 16 | Guadalupe Arreola | A | 17 | ~ | 4-5-09 | 3-30-09 | 450~ | | | | | | " |
| 17 | | Vacant | | | | | | | | | 450~ | | | |
| 18 | | Vacant | | | | | | | | | 450~ | | | |
| 19 | | Vacant | | | | | | | | | 450~ | | | |
| 20 | | Vacant | | | | | | | | | 450~ | | | |
| | | | | | | [Total Sec. Dep] ~ | | | 1800 (Current Rent Roll) | | | 1800 | | | |

** Lease Occupancy Status:
A–Annual, M–Monthly, S–Semi Monthly

Signature: _____   Date: 8-23-09

Exhibit 9A– Current Rent Roll Information (4.2000)

# CURRENT RENT ROLL INFORMATION

Project Name / Address / ID: Garden Apartments 9608-2412-2418 E. Roosevelt St. - Phx Az 85008   Borrower: Amelio and Avangenia Felix

Date: 8-23-09   Prepared By: Ampelio Felix

| Seq # | Unit/Apt Number | Address / Tenant Name | Lease Occupy Status | Months Continuous Occupancy | Security Deposit | Lease Start Date | Lease Exp Date | Apt Unit Base Rent $1 Mo. | Leased Rental Car Storage Sp # / Addnl Rent | Asking Base Rent For Any Vacant Unit | Concessions? or In Term Escalation Clause Yes/No | Prompt Pay Discount? If Yes - Comments | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2608 E. Roosevelt St. 170 # 0 Address | | | | | | | | | | | | |
| 1 | | Eladio Sanchez | A | 17 | - | 5-01-08 | 2-28-09 | 450- | | | | 1 bedroom | Apx 550 sq' |
| 2 | | Vacant | | | | | | | | 450- | | " | " |
| 3 | | Sandra Gilbert | A | 34 | 100- | 8-01-06 | 10-30-06 | 450- | | | | " | " |
| 4 | | Vacant | new | | | | | | | 450- | | " | " |
| 5 | | Merenda Alcantara | 5 | new | - | 8-14-09 | 8-30-10 | 450- | | | | " | " |
| 6 | | Allan Richardson | A | 18 | 100- | 3-01-08 | 2-30-09 | 450- | | | | Or month 5-12 to 9-12 $450- | " |
| 7 | | Ramon and Luis Valdez | - | 59 | 100- | 9-01-04 | 9-30-05 | Mgr- | | | | Apartment is Free For mgr. | " |
| 8 | | Kim Dibble | A | 31 | 200- | 10-01-07 | 10-30-08 | 450- | | | | " | " |
| 9 | | Alfonso Arviso | A | 62 | - | 5-01-04 | 4-30-05 | 450- | | | | " | " |
| 10 | | Alvaro Ozuna | A | 9 | - | 11-15-08 | 10-10-09 | 450- | Cafe - | | | " | " |
| 11 | | Jose Angel Juarez | A | 15 | - | 5-3-08 | 4-30-09 | 450- | | | | " | " |
| 12 | | Avelita Calderon | A | 3 | - | 6-01-09 | 5-30-10 | 450- | | 900- | | " | " |

Total Sec. Dep: 500-

Current Rent Roll: 4050-

** Lease Occupancy Status:
A-Annual, M-Monthly S-Semi Monthly

Signature: _____   Date: 8-23-09

Garden Apts

## Garden Apartments

| Apt. # | Name | Date | Amount | Balance | Notes |
|---|---|---|---|---|---|
| 2612 | E. Roosevelt | | | | |
| 1 | Cesar Saavedra 1st month special $300.00 | 12/15/2009 | 300-150-p | -0- | 1-15 To 1-30 $350= | 500 |
| 2 | VACANT Juan Carlos Bruno | 12-23 | 200- JAN | -0- | 1st month special $200- 1-01-10  1-31-10 | 700 |
| 3 | VACANT | | | | | 
| 4 | Ramana Diaz first month special $300.00 | 12/1/2009 | 300.- | -0- | | 550 |
| 2618 | | | | | |
| 1 | VACANT | | | | | 450 |
| 2 | Juan Dios Eloiso | 3/28/2009 | 450.- | -0- | | 450 |
| 3 | Claudia Castro | 4/8/2009 | 175- | -0- | Proceed to stay | 400 |
| 4 | Leoncio Lopez | | 200- | -0- | Reduction to stay | 500 |
| 2623 | | | | | |
| 1 | Gavino Salgado | 10/1/2005 | 550- | -0- | | 550 |
| 2 | Atanacio Torres | 9/1/2005 | 450- | -0- | | 450 |
| 3 | VACANT | | | | | 
| 4 | Aurelio de Jesus 1st month special $300.00 | 1/1/2010 | 300-JAN | -0- | new tenant - 1-01-10 to 1-30-10 | 500 |
| 2608 | | | | | |
| 1 | Eladio Sanchez | 3/1/2008 | 300- | 150- | | 450 |
| 2 | VACANT | | | | | 
| 3 | Dennis&Sandra Gilbert | 11/1/2006 | 450- | -0- | | 450 |
| 4 | VACANT | | | | | 
| 5 | VACANT | | | | | 
| 6 | VACANT | | | | | 
| 7 | VACANT | | | | | 
| 8 | Kim Dibble | 10/10/2007 | 450- | -0- | | 450 |
| 9 | Alfonso Arviso | 5/1/2004 | 450- | -0- | | 450 |
| 10 | VACANT | | | | | 
| 11 | Jose Angel Juarez | 5/3/2008 | 450- | 35- | | 450 |
| 12 | Anette Calizosa | | 415- | 35== | | 450 |
| 13 | VACANT | | | | | 
| 14 | VACANT | | | | | 
| 15 | VACANT | | | | | 
| 16 | VACANT | | | | | 
| 17 | VACANT | | | | | 
| 18 | VACANT | | | | | 
| 19 | VACANT | | | | | 
| 20 | VACANT | | | | | 

Total  Total December    4490.==    $185

Month ___December___

FAX TO: 480-895-8092

## Application to Rent

Please print clearly.

Keep a copy of this application for a period of two years!!!

Full Name of Applicant: Last **Bruno** First **Juan carlos** Middle _____ Home Cell Phone (480) 709-9582

Applicant Social Sec. # _____ Date of Birth **10-10-88** Driver's Lic. # **none** Bus. Phone (480) 753-6033

Proposed occupants. Total number of occupants _____ Each proposed occupant that is 18 years or older must complete an Application to Rent.

| Full Name (First, Middle, Last) | Relationship | Social Sec. # | Date of Birth | Occupation |
|---|---|---|---|---|
| Juan carlos Bruno | Husband | — | 10-10-88 | Taping |
| Estela Najera | wife | — | | |
| Bridn | Son | — | 10-29-05 | |
| Emely | Daughter | — | 11-16-07 | |

Will you have any pets? ☐ Yes ☒ No If yes describe. _____

Why are you vacating your present place of residence? _____

Have you ever been evicted? ☐ Yes ☒ No If yes describe. _____

Have you ever been convicted of a criminal offense? ☐ Yes ☒ No If yes describe. _____

Give the following information as to your last two places of residence.    (Indicate R for rent, O for own.)

| Complete Address - Street. | City. | State. Zip | R/O | Rent / Pay $ | Landlord / Mort. | Phone | From to Date |
|---|---|---|---|---|---|---|---|
| Present | 2817. N. 17th Pl. Phx AZ 85008 | | | 400 | Pilo | ( ) — | 2 months |
| Previous | | | | | | ( ) | |

Business references / Source of income.    (Indicate F for full time, P for part time, S for self-employed. If self-employed include tax returns.)

| Employed By | F/P/S | Address. | City. | State | Mo. Gross $ | Supervisor | Phone | From to Date |
|---|---|---|---|---|---|---|---|---|
| Present | PCI | FT | 1620 wRanch Rd Temple N | | | Efrain | (480) 753-6033 | 1 yr |
| Previous | | | | | | | | |

Present Gross Monthly Income $ _____ Other Income _____

Give two local credit references.    (Auto loans, department stores, credit cards, other loans. Do not include public utility companies.)

| Name | Address. | City. | State | Phone | Acct. No. |
|---|---|---|---|---|---|
| | | | | ( ) | |
| | | | | ( ) | |

Give one local reference.

| Name | Address, | City. | State | Relationship | Phone |
|---|---|---|---|---|---|
| | | | | | ( ) |

Auto
Color
Lic. #
Make

Auto
Color
Lic.#
Make

In case of an emergency contact. Name **Estela Najera** Phone (480) 709-9582

Each adult applicant (18 years or older) must fill out an Application to Rent and is being charged a NONREFUNDABLE FEE of $ _____ for applicant screening. The tenant screening or consumer credit report may entail, credit or financial history, public records search, calling current, former landlords and employers, and verifying any information on the application. CORRECT INFORMATION - Applicant represents that all of the above statements are true and complete. Applicant acknowledges that giving false information herein or giving an incomplete application may constitute grounds for rejection of this application, termination of right of occupancy, and / or forfeiture of deposits and may constitute a criminal offense under the laws of this state. By signing this application you authorize the screening process and acknowledge a copy of this notice. Applicant acquires no rights in the rental unit until a Holding or Security Deposit is paid when requested by the Landlord or Manager.

OFFICE USE: Application # _____ Report type ☐ CRD ☐ SUM ☐ FUL ☐ BEA ☐ EMP   Applicant _____

# CRIME FREE LEASE ADDENDUM

In consideration of the execution or renewal of a lease of the dwelling unit identified in the lease, Owner and Resident agree as follows:

1. Resident, any members of the resident's household or a guest or other person under the resident's control shall not engage in criminal activity, including drug-related criminal activity, on or near the said premises. "Drug-related criminal activity" means the illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use of a controlled substance (as defined in Section 102 or the Controlled Substance Act [21 U.S.C. 802]).

2. Resident, any member of the resident's household or a guest or other person under the resident's control shall not engage in any act intended to facilitate criminal activity, including drug-related criminal activity, on or near the said premises.

3. Resident or members of the household will not permit the dwelling unit to be used for, or to facilitate criminal activity, including drug-related criminal activity, regardless or whether the individual engaging in such activity is a member of the household, or a guest.

4. Resident, any member of the resident's household or a guest, or another person under the resident's control shall not engage in the unlawful manufacturing, selling, using, storing, keeping, or giving of a controlled substance as defined in A.R.S. 13-3451, at any locations, whether on or near the dwelling unit premises or otherwise.

5. Resident, any member of the resident's household, or a guest or another person under the resident's control shall not engage in any illegal activity, including prostitution as defined in A.R.S. 13-3211, criminal street gang activity as defined in A.R.S. 13-105 and 13-2308, threatening or intimidating as prohibited in A.R.S. 13-1202, assault as prohibited in A.R.S. 13-1203 including but not limited to the unlawful discharge of firearms, on or near the dwelling unit premises, or any breach of the lease agreement that otherwise jeopardizes the health, safety and welfare of the landlord, his agent or other tenant or involving imminent or actual serious property damage, as defined in A.R.S. 33-1368.

6. VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL AND IRREPARABLE VIOLATION OF THE LEASE AND GOOD CAUSE FOR IMMEDIATE TERMINATION OF TENANCY. A single violation of any of the provisions of this added addendum shall be deemed a serious violation and a material and irreparable non-compliance. It is understood that a single violation shall be good cause for immediate termination of the lease under A.R.S. 33-1377, as provided in A.R.S. 33-1368. Unless otherwise provided by law, proof of violation shall not require criminal conviction, but shall be by a preponderance of the evidence.

7. In case of conflict between the provisions of this addendum and any other provisions of the lease, the provisions of the addendum shall govern.

8. This LEASE ADDENDUM is incorporated into the lease executed or renewed this day between Owner and Resident.

Aurelio de Jesus
Resident Signature                          Date: 1-21-09

_____                     Date: _____
Resident Signature

_____                     Date: _____
Resident Signature

_____                     Date: 12/01/09
Property Manager's Signature

Property 2623 E. Portland St. #4

# CRIME FREE LEASE ADDENDUM

In consideration of the execution or renewal of a lease of the dwelling unit identified in the lease, Owner and Resident agree as follows:

1. Resident, any members of the resident's household or a guest or other person under the resident's control shall not engage in criminal activity, including drug-related criminal activity, on or near the said premises. "Drug-related criminal activity" means the illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use of a controlled substance (as defined in Section 102 or the Controlled Substance Act [21 U.S.C. 802]).

2. Resident, any member of the resident's household or a guest or other person under the resident's control shall not engage in any act intended to facilitate criminal activity, including drug-related criminal activity, on or near the said premises.

3. Resident or members of the household will not permit the dwelling unit to be used for, or to facilitate criminal activity, including drug-related criminal activity, regardless or whether the individual engaging in such activity is a member of the household, or a guest.

4. Resident, any member of the resident's household or a guest, or another person under the resident's control shall not engage in the unlawful manufacturing, selling, using, storing, keeping, or giving of a controlled substance as defined in A.R.S. 13-3451, at any locations, whether on or near the dwelling unit premises or otherwise.

5. Resident, any member of the resident's household, or a guest or another person under the resident's control shall not engage in any illegal activity, including prostitution as defined in A.R.S. 13-3211, criminal street gang activity as defined in A.R.S. 13-105 and 13-2308, threatening or intimidating as prohibited in A.R.S. 13-1202, assault as prohibited in A.R.S. 13-1203 including but not limited to the unlawful discharge of firearms, on or near the dwelling unit premises, or any breach of the lease agreement that otherwise jeopardizes the health, safety and welfare of the landlord, his agent or other tenant or involving imminent or actual serious property damage, as defined in A.R.S. 33-1368.

6. VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL AND IRREPARABLE VIOLATION OF THE LEASE AND GOOD CAUSE FOR IMMEDIATE TERMINATION OF TENANCY. A single violation of any of the provisions of this added addendum shall be deemed a serious violation and a material and irreparable non-compliance. It is understood that a single violation shall be good cause for immediate termination of the lease under A.R.S. 33-1377, as provided in A.R.S. 33-1368. Unless otherwise provided by law, proof of violation shall not require criminal conviction, but shall be by a preponderance of the evidence.

7. In case of conflict between the provisions of this addendum and any other provisions of the lease, the provisions of the addendum shall govern.

8. This LEASE ADDENDUM is incorporated into the lease executed or renewed this day between Owner and Resident.

_____     Date: 12-23-09
Resident Signature

_____     Date:_____
Resident Signature

_____     Date:_____
Resident Signature

_____     Date: 12-23-09
Property Manager's Signature

Property  2612 E. Roosevelt st #2
                        PHX -

*NoTe* Tenant paid $150⁰⁰ on 12-21-09 Toward #300⁰⁰ Rent for 1ST Month - Bal. of $150⁰⁰ due oN or Before Januay 1ST. Will NoT be Able to move in if Bal. is noT paid on Time.
* *(initials)*

## RENTAL LEASE AGREEMENT
SPECIAL #300⁰⁰ 1ST month          602-594-9780

Apartment Number ___4___          Lease Term __6 MonTHs__

Complex Name __Garden Apartments__     Type of Apartment __2 - bedroom__

Address __2623 E Portland St. #4__     City __Phoenix__ AZ, Zip __85008__

This __21__ day of __December__, 20__09__, the undersigned RESIDENT(S) hereby agrees to rent the premises hereinafter described on the terms and conditions set forth in this Agreement, attached schedules to Rental Agreement and signed Application.

Full Name of Resident(s) __Aurelio de Jesus - Patricia Murro__ — 2 Adults

The Apartment will be occupied by Resident(s) and, (list all others) __4 Kids—__

Services Furnished: __Water__

Resident agrees to pay the Owner, its successors and assigns as rent for the demised premises the sum of __Five hundred dollars .⁰⁰ _____ Dollars ($ __500⁰⁰__ ) plus applicable taxes for the term commencing on __1 January 2010,200__, and ending on the last day of ~~May~~ __JUNE__, ~~200~~ __2010__

Resident shall pay monthly installments of $ __500—__ plus applicable taxes (hereinafter referred to as "rent"). Rent shall be payable in advance as follows:

| | FROM | THROUGH | MONTHLY RENT | TAX | TOTAL |
|---|---|---|---|---|---|
| RENT SCHEDULE | 1-1-10 | 1-30-10 | 300⁰⁰ For 1sT MonTH | | |
| PRO RATE | | | | | |
| | 2-1-10 | 6-30-10 | 500⁰⁰ | | |

A.  All rents are due and payable on the first (1st) day of each month. Late charges will be assessed after the fifth (5th), starting with twenty-five dollars ($25.00) for the second (2nd), with an additional five dollars ($5.00) per day thereafter. ACCEPTABLE FORM OF PAYMENT IS A MONEY ORDER OR CASHIER'S CHECK ONLY. NO CASH WILL BE ACCEPTED. _____ (Initial)

RENTAL DISCOUNTS WILL NOT BE HONORED UNLESS RENT IS RECEIVED ON OR BEFORE THE FIRST (1ST) OF EACH MONTH. _____ (Initial)

The Resident hereby deposits the Total Sum of $ _____ . $ _____ , as a NON-REFUNDABLE decorating charge. $ _____ as a Security Deposit for any breach of the conditions or covenants of this Agreement or any obligations imposed by law. Upon termination of this Agreement, the Owner agrees to refund to the Resident the aforesaid deposit after vacating of the premises at the expiration of this Agreement, provided that all terms of this Agreement have been complied with and Thirty (30) day written notice has been given. The landlord may use tenant deposits for operational expenses during the term of this lease. _____ (Initial)

B.  The rules provided governing the premises, Schedule A, are deemed a part hereof and a breach of any rule shall constitute a default hereunder.

C.  The Owner or its agents may enter the premises without consent of the Resident in case of emergency, to make repairs or at such times and under such circumstances as provided by law.

D.  If Resident defaults in performance of any provision of this Agreement, or violates or fails to observe any of the rules and regulations governing the premises, or if the Resident disturbs or annoys other residents of the premises or the buildings of which the premises are a part, or if the Resident violates any obligation imposed upon him by law, the Owner shall be entitled to all remedies provided by law, including, but not limited to, termination of this Agreement, recovery of possession, damages and injunctive relief.

E.  Any automobile stored or placed in that area designated for the parking or storage of automobiles and allocated to the Resident, and the contents of any such automobile, shall be at the sole risk of the Resident, it being understood and agreed that the Owner shall not be held in any way responsible for the Resident for loss of, or damage to, the Resident's automobile or to any personal property left herein.

F.    The Resident also agrees to hold Owner harmless against all damages, accidents and injuries to any family member, guest, invitee, servant of the Resident's or property of the same caused by or resulting from or in connection with said building, the premises or things in and about the premises and building during the terms of this Agreement or while the Resident is occupying the same. We strongly recommend that Resident obtain renter's insurance.

G.    The Resident hereby agrees not to sublet, sign, rent or lease said apartment covered by period of this Agreement. Nor should any other one besides the persons signing this Agreement occupy said apartment.

H.    Except as may be otherwise provided by a separate Agreement signed by the parties and attached to this rental Agreement and made a part hereof, Resident agrees to do all that is required by law including, but not limited to, the following:

    1.    Comply with all obligations primarily imposed upon tenants by applicable provisions of local laws materially affecting health and safety.

    2.    Keep that part of the premises that he occupies and uses as clean and safe as the condition of the premises permit.

    3.    Dispose from his dwelling unit all ashes, rubbish, garbage and other waste in a clean and safe manner.

    4.    Keep all plumbing fixtures in the dwelling unit or used by the tenant as clean as their condition permits.

    5.    Use in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air-conditioning and other facilities and appliances.

    6.    Not deliberately or negligently destroy, deface, damage, impair or remove any part of the premises or knowingly permit any person to do so.

    7.    Conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbor's peaceful enjoyment of the premises.

I.    Notice in writing of vacating the premises must be delivered to the Owner in the same place as rent is paid, no less than thirty (30) days prior to the end of the rental period. Otherwise, the Owner may, at the Owner's option, consider me (us) to have extended the lease on a month-to-month basis until such time as we give the Owner no less that thirty (30) days notice in writing of intention to vacate the apartment. Resident agrees, upon vacation of the premises, to deliver the keys and to leave the premises in the same condition as upon his first occupying the premises, ordinary wear and tear excepted. Otherwise, these charges will be deducted from your security deposit, and only the balance refunded is due. Failure to deliver the keys to the Owner or its agent at the end of the term set forth above shall constitute, at the option of the Owner, a renewal of this Agreement on a month-to-month basis, it being understood that any extension of this Agreement shall be on a month-to-month basis unless the Owner agrees otherwise in writing.

J.    In the event of an increase in utility rate by the supplying utility company, the base rent shall be increased at the beginning of the month following the date of that increase. The rent increase shall be the same dollar amount as the increase in utility cost per apartment. This paragraph is void where resident is responsible for utilities.

K.    This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties. This Agreement represents the entire understanding of the parties and may be changed only in writing, signed by each party.

L.    The failure by either Resident or Owner to fully perform this Agreement in any manner shall entitle either party to take all such actions against the defaulting party as shall be provided by law and, except as may be provided by law, neither party shall be deemed to have waived any existing or future right or remedy by taking any such action. All costs, attorneys' fees and other expenses enforcing this Agreement shall be paid to the prevailing party by the losing party.

M.    SIGNATURES: The Resident reading, understanding, and accepting this Rental Agreement, signs and acknowledges receipt of a fully executed copy this _3 1_ day of _December_ _2009_.

_____  
Manager

_Aurelio de Jesus_  
Resident

_____  
Resident

(Note: All residents on lease must sign.)

*Special - No Deposit*

*1ST Month $300⁰⁰ —*

*Rent — $500 —*

# RENTAL LEASE AGREEMENT

Apartment Number **1**

Complex Name **Garden Apartments**          Lease Term **Month to Month**

Type of Apartment **2 bedroom**

Address, **2612 E. Roosevelt St. #1**          City **Phoenix** AZ, Zip **85008**

This **14** day of **December**, 200**9**, the undersigned RESIDENT(S) hereby agrees to rent the premises hereinafter described on the terms and conditions set forth in this Agreement, attached schedules to Rental Agreement and signed Application.

Full Name of Resident(s) **Cesar Saavedra - Tanya & Kids 3**

The Apartment will be occupied by Resident(s) and, (list all others) _____

Services Furnished: **Water** _____

Resident agrees to pay the Owner, its successors and assigns as rent for the demised premises the sum of

**Five hundred —** _____ Dollars ($ **500 —** )

plus applicable taxes for the term commencing on **15 December**, 200**9**, and ending on the last day

of **May 30**, 20~~00~~ **2010**

Resident shall pay monthly installments of $ **500 —** plus applicable taxes (hereinafter referred to as "rent"). Rent shall be payable in advance as follows:

|  | FROM | THROUGH | MONTHLY RENT | TAX | TOTAL |
|---|---|---|---|---|---|
| RENT SCHEDULE | 12-15-09 | 1-15-10 |  |  | 300- |
| PRO RATE | 1-15-2010 | 1-30-2010 |  |  | 250- |
|  | 2-1-2010 | 5-30-2010 |  |  | 500⁰⁰ |

A.  All rents are due and payable on the first (1st) day of each month. Late charges will be assessed after the fifth (5th), starting with twenty-five dollars ($25.00) for the second (2nd), with an additional five dollars ($5.00) per day thereafter. ACCEPTABLE FORM OF PAYMENT IS A MONEY ORDER OR CASHIER'S CHECK ONLY. NO CASH WILL BE ACCEPTED. _____ (initial)

RENTAL DISCOUNTS WILL NOT BE HONORED UNLESS RENT IS RECEIVED ON OR BEFORE THE FIRST (1ST) OF EACH MONTH. _____ (initial)

The Resident hereby deposits the Total Sum of $ _____ $ _____ as a NON-REFUNDABLE decorating charge. $ _____ as a Security Deposit for any breach of the conditions or covenants of this Agreement or any obligations imposed by law. Upon termination of this Agreement, the Owner agrees to refund to the Resident the aforesaid deposit after vacating of the premises at the expiration of this Agreement, provided that all terms of this Agreement have been complied with and Thirty (30) day written notice has been given. The landlord may use tenant deposits for operational expenses during the term of this lease. _____ (initial)

B.  The rules provided governing the premises, Schedule A, are deemed a part hereof and a breach of any rule shall constitute a default hereunder.

C.  The Owner or its agents may enter the premises without consent of the Resident in case of emergency, to make repairs or at such times and under such circumstances as provided by law.

D.  If Resident defaults in performance of any provision of this Agreement, or violates or fails to observe any of the rules and regulations governing the premises, or if the Resident disturbs or annoys other residents of the premises or the buildings of which the premises are a part, or if the Resident violates any obligation imposed upon him by law, the Owner shall be entitled to all remedies provided by law, including, but not limited to, termination of this Agreement, recovery of possession, damages and injunctive relief.

E.  Any automobile stored or placed in that area designated for the parking or storage of automobiles and allocated to the Resident, and the contents of any such automobile, shall be at the sole risk of the Resident, It being understood and agreed that the Owner shall not be held in any way responsible to the Resident for loss of, or damage to, the Resident's automobile or to any personal property left herein.

F. The Resident also agrees to hold Owner harmless against all damages, accidents and injuries to any family member, guest, invitee, servant of the Resident's or property of the same caused by or resulting from or in connection with said building, the premises or things in and about the premises and building during the terms of this Agreement or while the Resident is occupying the same. We strongly recommend that Resident obtain renter's insurance.

G. The Resident hereby agrees not to sublet, sign, rent or lease said apartment covered by period of this Agreement. Nor should any other one besides the persons signing this Agreement occupy said apartment.

H. Except as may be otherwise provided by a separate Agreement signed by the parties and attached to this rental Agreement and made a part hereof, Resident agrees to do all that is required by law including, but not limited to, the following:

  1. Comply with all obligations primarily imposed upon tenants by applicable provisions of local laws materially affecting health and safety.

  2. Keep that part of the premises that he occupies and uses as clean and safe as the condition of the premises permit.

  3. Dispose from his dwelling unit all ashes, rubbish, garbage and other waste in a clean and safe manner.

  4. Keep all plumbing fixtures in the dwelling unit or used by the tenant as clean as their condition permits.

  5. Use in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air-conditioning and other facilities and appliances.

  6. Not deliberately or negligently destroy, deface, damage, impair or remove any part of the premises or knowingly permit any person to do so.

  7. Conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbor's peaceful enjoyment of the premises.

I. Notice in writing of vacating the premises must be delivered to the Owner in the same place as rent is paid, no less than thirty (30) days prior to the end of the rental period. Otherwise, the Owner may, at the Owner's option, consider me (us) to have extended the lease on a month-to-month basis until such time as we give the Owner no less that thirty (30) days notice in writing of intention to vacate the apartment. Resident agrees, upon vacation of the premises, to deliver the keys and to leave the premises in the same condition as upon his first occupying the premises, ordinary wear and tear excepted. Otherwise, these charges will be deducted from your security deposit, and only the balance refunded is due. Failure to deliver the keys to the Owner or its agent at the end of the term set forth above shall constitute, at the option of the Owner, a renewal of this Agreement on a month-to-month basis, it being understood that any extension of this Agreement shall be on a month-to-month basis unless the Owner agrees otherwise in writing.

J. In the event of an increase in utility rate by the supplying utility company, the base rent shall be increased at the beginning of the month following the date of that increase. The rent increase shall be the same dollar amount as the increase in utility cost per apartment. This paragraph is void where resident is responsible for utilities.

K. This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties. This Agreement represents the entire understanding of the parties and may be changed only in writing, signed by each party.

L. The failure by either Resident or Owner to fully perform this Agreement in any manner shall entitle either party to take all such actions against the defaulting party as shall be provided by law and, except as may be provided by law, neither party shall be deemed to have waived any existing or future right or remedy by taking any such action. All costs, attorneys' fees and other expenses enforcing this Agreement shall be paid to the prevailing party by the losing party.

M. SIGNATURES: The Resident reading, understanding, and accepting this Rental Agreement, signs and acknowledges receipt of a fully executed copy this _____ day of _____, 2 0 0 .

_____  _____
    Manager              Resident

               _____
              Resident

(Note: All residents on lease must sign.)

_-Special - 1st Month #200_

# RENTAL LEASE AGREEMENT

Apartment Number _2_                                      Lease Term _Month to Month_

Complex Name _Garden Apartments -_              Type of Apartment _1 bedroom_

Address: _2612 E. Roosevelt St. #2_      City _Phoenix_ AZ, Zip _85008_

This _23_ day of _December_, _2009_, the undersigned RESIDENT(S) hereby agrees to rent the premises
hereinafter described on the terms and conditions set forth in this Agreement, attached schedules to Rental Agreement
and signed Application.

Full Name of Resident(s) _Ivan Carlos Buno, Estela Najera, Brian Emely_

The Apartment will be occupied by Resident(s) and, (its all others) _____

Services Furnished: _Water_

Resident agrees to pay the Owner, its successors and assigns as rent for the demised premises the sum of
_Four Hundred dollars 00_ Dollars ($ _400 00_ )

plus applicable taxes for the term commencing on _1 January 2009 2010_, and ending on the last day
of _Month - Month 2009_

Resident shall pay monthly installments of $ _400 00_ plus applicable taxes (hereinafter referred to as "rent").
Rent shall be payable in advance as follows:

| | FROM | THROUGH | MONTHLY RENT | TAX | TOTAL |
|---|---|---|---|---|---|
| RENT SCHEDULE | _01-01-10_ | _01-31-10_ | | | _200 00_ |
| PRO RATE | _2/1/10_ | | _400 00_ | | |

A.   All rents are due and payable on the first (1st) day of each month. Late charges will be assessed after the fifth
(5th), starting with twenty-five dollars ($25.00) for the second (2nd), with an additional five dollars ($5.00) per
day thereafter. ACCEPTABLE FORM OF PAYMENT IS A MONEY ORDER OR CASHIER'S CHECK ONLY.
NO CASH WILL BE ACCEPTED. _____ (Initial)

RENTAL DISCOUNTS WILL NOT BE HONORED UNLESS RENT IS RECEIVED ON OR BEFORE THE FIRST
(1ST) OF EACH MONTH. _____ (Initial)

The Resident hereby deposits the Total Sum of $ _____ , $ _____ as a NON-
REFUNDABLE decorating charge. $ _____ as a Security Deposit for any breach of the condi-
tions or covenants of this Agreement or any obligations imposed by law. Upon termination of this Agreement, the
Owner agrees to refund to the Resident the aforesaid deposit after vacating of the premises at the expiration of
this Agreement, provided that all terms of this Agreement have been complied with and Thirty (30) day written no-
tice has been given. The landlord may use tenant deposits for operational expenses during the term of this lease.
_____ (Initial)

B.   The rules provided governing the premises, Schedule A, are deemed a part hereof and a breach of any rule shall
constitute a default hereunder.

C.   The Owner or its agents may enter the premises without consent of the Resident in case of emergency, to make
repairs or at such times and under such circumstances as provided by law.

D.   If Resident defaults in performance of any provision of this Agreement, or violates or fails to observe any of the
rules and regulations governing the premises, or if the Resident disturbs or annoys other residents of the premises
or the buildings of which the premises are a part, or if the Resident violates any obligation imposed upon him by
law, the Owner shall be entitled to all remedies provided by law, including, but not limited to, termination of this
Agreement, recovery of possession, damages and injunctive relief.

E.   Any automobile stored or placed in that area designated for the parking or storage of automobiles and allocated to
the Resident, and the contents of any such automobile, shall be at the sole risk of the Resident, it being under-
stood and agreed that the Owner shall not be held in any way responsible to the Resident for loss of, or damage
to, the Resident's automobile or to any personal property left herein.

F.    The Resident also agrees to hold Owner harmless against all damages, accidents and injuries to any family member, guest, invitee, servant of the Resident's or property of the same caused by or resulting from or in connection with said building, the premises or things in and about the premises and building during the terms of this Agreement or while the Resident is occupying the same. We strongly recommend that Resident obtain renter's insurance.

G.    The Resident hereby agrees not to sublet, sign, rent or lease said apartment covered by period of this Agreement. Nor should any other one besides the persons signing this Agreement occupy said apartment.

H.    Except as may be otherwise provided by a separate Agreement signed by the parties and attached to this rental Agreement and made a part hereof, Resident agrees to do all that is required by law including, but not limited to, the following:

    1.    Comply with all obligations primarily imposed upon tenants by applicable provisions of local laws materially affecting health and safety.

    2.    Keep that part of the premises that he occupies and uses as clean and safe as the condition of the premises permit.

    3)    Dispose from his dwelling unit all ashes, rubbish, garbage and other waste in a clean and safe manner.

    4.    Keep all plumbing fixtures in the dwelling unit or used by the tenant as clean as their condition permits.

    5.    Use in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air-conditioning and other facilities and appliances.

    6.    Not deliberately or negligently destroy, deface, damage, impair or remove any part of the premises or knowingly permit any person to do so.

    7.    Conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbor's peaceful enjoyment of the premises.

I.    Notice in writing of vacating the premises must be delivered to the Owner in the same place as rent is paid, no less than thirty (30) days prior to the end of the rental period. Otherwise, the Owner may, at the Owner's option, consider me (us) to have extended the lease on a month-to-month basis until such time as we give the Owner no less that thirty (30) days notice in writing of intention to vacate the apartment. Resident agrees, upon vacation of the premises, to deliver the keys and to leave the premises in the same condition as upon his first occupying the premises, ordinary wear and tear excepted. Otherwise, these charges will be deducted from your security deposit, and only the balance refunded is due. Failure to deliver the keys to the Owner or its agent at the end of the term set forth above shall constitute, at the option of the Owner, a renewal of this Agreement on a month-to-month basis, it being understood that any extension of this Agreement shall be on a month-to-month basis unless the Owner agrees otherwise in writing.

J.    In the event of an increase in utility rate by the supplying utility company, the base rent shall be increased at the beginning of the month following the date of that increase. The rent increase shall be the same dollar amount as the increase in utility cost per apartment. This paragraph is void where resident is responsible for utilities.

K.    This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties. This Agreement represents the entire understanding of the parties and may be changed only in writing, signed by each party.

L.    The failure by either Resident or Owner to fully perform this Agreement in any manner shall entitle either party to take all such actions against the defaulting party as shall be provided by law and, except as may be provided by law, neither party shall be deemed to have waived any existing or future right or remedy by taking any such action. All costs, attorneys' fees and other expenses enforcing this Agreement shall be paid to the prevailing party by the losing party.

M.    SIGNATURES: The Resident reading, understanding, and accepting this Rental Agreement, signs and acknowledges receipt of a fully executed copy this _23_ day of _P̶i̶e̶n̶t̶_ _2009_

_____          _____
        Manager                          Resident

                                 _____
                                         Resident

(Note: All residents on lease must sign.)

# EXHIBIT "B"




















































